UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES : | |
| : | |
| v. : | Case No. 24cr35 (ACR) |
| : | |
| JAMES PERRY JONES : | |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS GPS DATA**

The Government's Opposition to the Motion to Suppress GPS Data (ECF # 38) fails to address head-on the applicable law relevant to the issue raised by the defendant. Rather, the government relies upon arguments that have been rejected by controlling D.C. case law, fails to appreciate that arguments applicable to police actions are not relevant to administrative agencies such as CSOSA, and proposes arguments that are at odds with government policies. Defendant addresses each of the government's arguments.

I.   **Statutory and Regulatory History**

The government provides a thorough step-by-step accounting of the formation of the Parole Commission and CSOSA. Gov't. Opp. 6-7. In 2000, the Commission issued a regulation that "[g]raduated sanctions may include … curfew with electronic monitoring[.]" *Id.* Then in 2004, CSOSA, acting alone with no input from the Parole Commission, issued a policy statement "allowing the CSO's to sanction offenders by requiring them to submit to GPS monitoring." Gov't. Opp. at 8.

> Parole and probation officers can monitor offenders in the community using electronic monitoring. They use two types of monitoring: radio frequency (RF) and global positioning system (GPS) monitoring. RF devices monitor offenders' presence in or absence from a fixed location. They are most commonly used to supervise those on house arrest or confinement and to enforce curfews by monitoring an offender's presence either continuously or during specified times. RF systems consist of battery-powered transmitters, typically worn around ankles or wrists, and home-based receivers that can verify whether offenders are within a certain distance

> and alert monitoring centers of violations, allowing correctional authorities to take action.

> GPS systems can continuously track offenders in real time, identifying their movements and whereabouts by transmitting location information to monitoring centers and triangulating signals from satellites and cellular towers. … When monitored offenders enter such exclusion zones, GPS devices alert supervising agencies, which can then take action.

https://www.pew.org/en/research-and-analysis/issue-briefs/2016/09/use-of-electronic-offender-tracking-devices-expands-sharply.

Needless to say, GPS monitoring is far more invasive than RF monitoring. Moreover, the government has conceded in the D.C. Court of Appeals that the Parole Commission had not ordered supervision through the use of GPS monitoring. ("In response to the court's question about CSOSA's authority, the government acknowledged that the Parole Commission's authority over supervised releasees under D.C. Code § 24-133(c)(2) encompassed GPS monitoring, … the Parole Commission had not ordered GPS monitoring for Mr. Davis[.]" *Davis v. United States*, 306 A.3d 89, 94–95 (D.C. 2023). Clearly, CSOSA acted on its own in implementing the use of GPS monitoring without the knowledge or approval of the Commission. This step went beyond what CSOSA was empowered to do: "Mirroring the system governing federal releasees, the United States Parole Commission has the same adjudicatory powers federal trial courts have to set or modify the conditions of release or revoke release—powers that include the authorization of warrantless searches—while CSOSA has the same powers that federal probation officers have to track compliance with these conditions of release." *Davis v. United States*, 306 A.3d 89, 92 (D.C. 2023)

The government seeks nonetheless to have this Court approve the use of GPS monitoring of Mr. Jones despite the fact the Parole Commission did not order CSOSA to use GPS monitoring. Rather, it argues, "The Parole Commission was well aware that CSOSA used GPS monitoring as an administrative sanction: CSOSA reports regularly to the Commission on each offender it supervises for the Commission …" Gov't. Opp. at p. 8 (internal quotation marks omitted). But this is beside the point. Mere knowledge on the part of the Parole Commission does not change the fact that the Parole Commission did not order CSOSA to include GPS monitoring in its supervision of released inmates – only the courts and the Commission have the authority to order this type of supervision.

The government, relying on the dissent in *Davis,* fairs no better with the argument that "CSOSA repeatedly informed Congress that it used GPS monitoring as an administrative sanction without express Commission or court approval." Gov't. Opp. at p. 9.  But this argument was rejected by the majority in *United States v. Wells*, No. 24-CO-0162, 2025 WL 2471868, at *8 (D.C. Aug. 28, 2025), "The fact that neither this court nor Congress intervened to put a stop to that GPS program earlier cannot be understood as their sub silentio authorization of the program—they were never asked to examine whether CSOSA had the statutory authority that it claimed."

## II.     D.C. Court of Appeals' GPS Cases

The government cites several D.C. Court of Appeals cases in support of its argument that this Court should not grant Jones' Motion to Suppress GPS Data. Gov't. Opp. at pp. 10-1. But, again, this argument fails.

"In *Jackson,* this court recognized that (1) requiring an individual to be subject to GPS monitoring is a search under the Fourth Amendment, *id.* at 472, and (2) such a search of an

3

individual on probation may be upheld as constitutional under the special needs doctrine, which allows reasonable regulations to substitute for the warrant and probable cause requirements of the Fourth Amendment where special needs exist, *id.* at 472-81(citing *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). But neither *Jackson* nor this court's subsequent decision in *Atchison v. United States*, 257 A.3d 524 (D.C. 2021) (extending the special needs rationale employed in *Jackson* to evaluate GPS monitoring of probationers to supervised releasees) considered if CSOSA's regulation authorizing electronic monitoring is lawful under the D.C. Code and therefore could be considered a "reasonable" basis for these searches under a special needs analysis. In their briefs to this court, the parties address this issue: Mr. Davis asserts that *CSOSA's imposition of a GPS monitor on Mr. Davis could not be upheld as a special needs search under Jackson, inter alia, because the regulation underlying this practice falls outside the agency's statutory authority;* the government argues, inter alia, that CSOSA's regulation is lawful and thus a reasonable foundation for a special needs search." *Davis v. United States*, 306 A.3d 89, 92 (D.C. 2023) (emphasis added).

      The reason none of cases cited by the government in its Opposition support its position is that none of the cases cited raised the argument raised in *Davis:* "We focus on Mr. Davis's argument that the trial court erred in denying his motion to suppress the GPS data, because CSOSA's regulations permitting GPS monitoring exceeded the agency's legal authority, and, without lawful regulations, the government's GPS search cannot be deemed reasonable under the Fourth Amendment special needs doctrine. This presents a purely legal question, which we review de novo. We conclude the special needs test is not satisfied and decline the government's invitation to look beyond that test to a totality-of-the-circumstances analysis under *Knights* and *Samson*." *Davis v. United States*, 306 A.3d at 95 (internal citation omitted).

Again, the Government relies upon the dissenting opinion, which at this stage of the game carries no weight whatsoever.

### III.   Supreme Court Precedent Regarding Exclusionary Rule

The government argues, "[T]he Supreme Court has held that exclusion is not warranted where officers acted in reliance upon a validly enacted statute, supported by long-standing administrative regulations and continuous judicial approval. Gov't. Opp. at p. 19 (internal citation and quotation marks omitted). This quotation fails to support the government's position. First, it applies to law enforcement actions, not the actions of an administrative agency. Second, as explained infra, CSOSA's GPS policy statement was <u>not</u> validly enacted. Third, the *Davis* case surmounts any preceding case addressing the GPS policy.

The government goes onto say, "But when the police act with objectively reasonable good-faith belief that the conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." Gov't. Opp. at p. 17 (internal citation and quotation marks omitted). Again, this does not apply in this instance. First, as addressed further below, the good-faith exception does not apply CSOSA's use of GPS monitoring. Second, the use of GPS monitoring was not a simple, isolated event. "As of September 30, 2023, there were 382 offenders subject to GPS monitoring, or 5.9 percent of the 6,431 total offenders supervised by CSP on this date. During FY 2023 (October 1, 2022 –September 30, 2023), CSP supervised a total of 1,958 unique individuals on GPS for at least one day in the fiscal year." https://www.csosa.gov/wp-content/uploads/2025/08/CSOSA-FY-2025-CBJ-Summary-StatementFAQs.pdf. These numbers disprove the notion that use of GPS monitoring was a simple isolated event. In addition, suppression of the GPS data in this

case will have a strong deterrent effect not only on CSOSA actions, but also those of other agencies.

Finally, it is worth noting that every case cited by the government relating to the exclusionary rule and the good-faith doctrine focus on police activity resulting from reliance on the action of neutral parties. "The throughline in each of these seminal 'good faith' cases is that the police reasonably relied on the judgment of roughly 'neutral' third parties—judges, legislators, and court clerks. Those parties are 'not adjuncts to the law enforcement team engaged in ... ferreting out crime,' so that 'they have no stake in the outcome of particular criminal prosecutions' and '[t]he threat of exclusion of evidence could not be expected to deter such individuals' in their action.' *Evans*, 514 U.S. at 15, 115 S.Ct. 1185 (regarding "court employees" who failed to "inform police officials that a[n arrest] warrant had been quashed"). Here it is not objectively reasonable for an agency to exceed the scope of its authority. CSOSA simply cannot impose conditions it was never empowered to impose.

For these reasons the government's sole reliance on cases involving police activity has no bearing on the issues in this case.

**IV.    The *Wells* Decision**

The decision in *United States v. Wells*, 341 A.3d 1096 (D.C. 2025) held that the good faith exception to exclusionary rule did not apply to Court Services and Offender Supervision Agency's (CSOSA) systemic misinterpretation of its legal authority to intrude on Fourth Amendment rights by subjecting defendants on supervised release to GPS monitoring; CSOSA was not a neutral decisionmaker, but, rather, was law enforcement agency, CSOSA's

6

GPS monitoring database was created and maintained with law enforcement purpose in mind,[1] CSOSA exercised its own mistaken judgment that it was statutorily authorized to unilaterally impose GPS monitoring when, in fact, it was not and no neutral third party had assured it otherwise, CSOSA's errors were not isolated and nonrecurring, but, instead, were systemic, and CSOSA's infirm regulations were not attenuated and far removed from recovery of incriminating evidence against defendant, but, rather, directly led to it.

Again, the government relies upon the dissenting opinion to support its position. It goes on to argue that D.C. Court of Appeals decisions are not binding on this Court. The government relies on dicta in *United States v. Castle*, 825 F.3d 625, 633 (D.C. Cir. 2016) which states, "A recent decision by the District of Columbia Court of Appeals, *In re J.F.*, 19 A.3d 304 (D.C. 2011), is also instructive, albeit not binding." The take-away from this is that this Court should look at the D.C. Court of Appeals decisions for guidance in deciding the issue raised by Mr. Jones in his Motion to Suppress GPS Data.

## **CONCLUSION**

Mr. Jones respectfully moves this Court to suppress the GPS data obtained as a result of the Fourth Amendment violation. It is clear that the government brought this case to the District Court in an effort to escape the rulings in *Davis* and *Wells*.[2] But Jones submits that the rulings in those cases were correct. Since this case can be brought back to Superior Court because the initial case was dismissed without prejudice, it would be proper to grant the Motion to Suppress.

---

[1] CSOSA routinely turns over to the police GPS data, particularly in crimes involving bank robbery, murder and other violent offenses.

[2] In *Davis* the D.C. Court of Appeals denied the government's petition for rehearing/rehearing en banc on December 17, 2024. In *Wells*, the government filed a Motion to Stay issuance of the Mandate "for 60 days to enable further review of the decision." The Motion was granted on September 11, 2025.

Respectfully submitted,

_____/s/_____
Christopher M. Davis #385582
Davis & Davis

1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202.234.7300

CERTIFICATE OF SERVICE

I hereby certify that a copy of this response was served on counsel for the United States via the court's CM/ECF system and by email to on this 10th day of October 2025.

_____/s/_____
Christopher M. Davis